*In re* MARRIAGE OF STEVEN HERRON, Petitioner-Appellee, and CHARLOTTE HERRON, Respondent-Appellant.

First District (3rd Division)   No. 78-2052

Opinion filed August 1, 1979.

Charlotte Adelman, of Chicago, for appellant.

Albert Brooks Friedman, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

Steven and Charlotte Herron lived in Louisiana with their two sons, Eric and David. In June 1977, a Louisiana court granted the husband a legal separation. The spouses entered into a written "Settlement of Community," dividing the marital property, and also agreed, though not in writing, that the husband would take custody of David and the wife

of Eric. The Louisiana court entered an order incorporating the settlement and awarding custody as agreed.

Steven took a new job and moved to Illinois, bringing David with him. Charlotte followed, with Eric, allegedly to be near David, and hoping for a reconciliation with her husband, who helped her move and find a job.

Steven then filed a petition for dissolution of marriage in the circuit court of Cook County. He took Charlotte to his lawyer's office with him, and she signed a written appearance and a stipulation to treat the matter as a default. After hearing Steven's testimony on custody and other matters, the court granted dissolution. Its order, entered on March 15, 1978, incorporated the settlement. The order also recited, incorrectly, that the settlement dealt with custody of the children, found that it was best for the children that they remain in separate custody as before, and so ordered. At the time, it appeared that these terms were acceptable to both parents; Steven indicated his approval on the face of the order, and the judge told him to send it to Charlotte's counsel for signature or serve notice on her.

Charlotte filed a timely petition, under sections 50(5) and 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 50(5), 68.3), to set aside those portions of the judgment dealing with property and with custody of David, the child living with Steven. She did not challenge the part of the judgment leaving her with custody of Eric, or the dissolution itself. She alleged that the whole course of affairs, starting with the Louisiana suit for separation, involved massive fraud and duress practiced upon her by Steven. The circuit court judge held a hearing on these accusations, and clearly did not believe Charlotte's story. But he was not sure she had fully understood, when she agreed to a default in the case of the Illinois suit, that she was permanently giving up custody of David. By this time, Steven had remarried; and the court noted, *sua sponte*, that there had been a change of circumstances. On these two grounds, the court ordered a hearing on David's custody. Steven did not challenge the propriety of this decision. Rather, he attempted to convince the judge, on a petition for rehearing, that the judge had really meant to order a hearing on both children; but the judge denied that this was what he meant. If Steven wanted a hearing on Eric, the court told him, he need only ask for it. Steven did not make the invited motion, but filed a notice of appeal from the denial of his petition for rehearing. This was ineffective, because the order was not appealable. The circuit court then entered a new order, allowing Steven to withdraw his notice of appeal, and modifying the previous order, as Steven desired, to grant a hearing on the custody of both children. We granted Charlotte leave to appeal from

this latest order. She contends that the hearing ordered by the circuit court judge should concern David alone.

## I.

■■■ Supreme Court Rule 304 provides that " * * * any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (Ill. Rev. Stat. 1977, ch. 110A, par. 304.) Vacating part of a final judgment, so that the remainder no longer adjudicates all the claims of all the parties, makes even that remainder no longer final or enforceable, and restores the circuit court's jurisdiction over the whole case, so that any part of the judgment can be revised. (*Peterson Bros. Plastics, Inc. v. Ullo* (1978), 57 Ill. App. 3d 625, 373 N.E.2d 416.) Thus, when Charlotte reopened the portion of the March 15, 1978, order dealing with David's custody, she renewed the court's jurisdiction over the portion of the order dealing with the other child's custody as well.

Steven might then have moved the court to hear evidence on both children, and to revise the judgment granting custody of Eric to Charlotte; and it would have been proper for the court to reconsider Eric's custody. The original order was predicated on the judge's belief that both parents had agreed to the arrangement. While such an agreement is not binding upon the court, which must independently protect the welfare of the children, the virtues of parental agreement are strong, and the law appreciates them. (See, *e.g.*, Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(1), (2).) The parents obviously know more about the family than a judge is likely to learn in a short, formal hearing. In a more or less amicable dissolution, the parents' natural desire to do what is best for their children gives any agreement about custody great weight as an indicator of what is in the best interest of the children. Moreover, amicable settlement of custody arrangements is a good thing in itself, for peace between the parents must benefit the children; and a court will hesitate to tamper with what may be a fragile agreement, worked out only with difficulty. It was therefore proper for the court, after only a brief hearing, to enter an order ratifying such an agreement, especially one reaffirming an established arrangement. Upon discovering, however, that there was no such agreement, the court could properly, upon a motion by Steven, have vacated its entire previous custody order as resting upon the court's mistake. There is no special merit to a spurious agreement, and no reason to assume that it adequately secures the children's welfare.

The court could not feel confident that it is in Eric's best interest to be in Charlotte's custody merely because Steven once approved an order providing so. At the time, Steven, as well as the court, seems to have thought he and Charlotte had an agreement. He may have compromised. That is, Steven may have felt personally that both the children would be better off with him, but may have consented to place Eric with Charlotte in the belief that the gain in family harmony would outweigh the difference in custodial competence; or, misperceiving his wife's attitude, he may have put his misgivings aside out of misguided deference to her judgment.

To hold Steven to his end of the compromise, while allowing Charlotte to fight for both children, would be both unfair to Steven and contrary to public policy, for it would discourage attempts to settle custody disputes amicably. It would amount to making Steven's "settlement offer," so to speak, not only admissible in evidence, but conclusive against him.

## II.

Steven, however, refused to move the court to reconsider its award of Eric to Charlotte. Instead, he insisted that the court's order granting Charlotte's petition for a hearing about David had really applied to both children. Charlotte contends that it was improper for the court to reopen the issue of Eric's custody *sua sponte*.

The court's action can hardly be regarded as truly *sua sponte*, for Steven, however much he resisted making the appropriate formal motion, left no doubt that he wanted the ruling he got. Considering all the circumstances, we see no unfairness to Charlotte in treating Steven's proceedings in open court as the equivalent of a motion.

More importantly, even if the circuit court's action had been entirely the judge's own idea, there would have been nothing wrong with that. Particularly in custody matters, where the court has an independent duty to protect the best interests of the children, it would be unsatisfactory to limit the judge to a role of passive reaction to the parents' motions. Eric should not be bound by Steven's legal misconceptions or tactics. As already discussed, once Charlotte destroyed the appearance of an agreement, the judge had good reason to believe that his order placing Eric in Charlotte's custody might be faulty. He was therefore justified in exercising his Rule 304 jurisdiction to revise the order, in the interest of the child, even *sua sponte*.

Moreover, Charlotte is hardly in a position to complain about *sua sponte* orders. Her own petition to reopen the judgment concerning David was granted on grounds not presented in the petition, the

allegation set forth in the petition having been found unbelievable by the circuit court judge.

## III.

■■ We turn now to Charlotte's argument that Steven is not entitled to reopen the Illinois circuit court judgment because he has failed to comply with section 610 of the Illinois Marriage and Dissolution of Marriage Act. Section 610 does not apply to Steven's attempt to revise the Illinois court's earlier judgment as such. The section applies only in the case of exercises of the courts' extraordinary continuing jurisdiction to modify "final" custody orders when due to changed circumstances the child's interest requires modification. We read nothing in section 610 which restricts the use of Civil Practice Act provisions or Supreme Court Rules to vacate or revise a judgment on grounds not peculiar to child custody cases. Thus, for example, section 610 does not preclude a motion under sections 50(5) or 68.3 of the Civil Practice Act or the application of Rule 304 with respect to a judgment awarding custody.

■■ We conclude, therefore, that the circuit court's decision to reopen its earlier judgment as to both children, and to hold a hearing on their custody, was correct—provided we limit our consideration to the proceedings in Illinois. We must, however, clarify a point that neither of the litigants, nor the circuit court, seems to have appreciated. The Illinois courts are not making an initial custody determination about these children; their custody has already been determined by court order, in Louisiana. If the Louisiana order is a permanent, final judgment, any Illinois order changing that custody is a modification judgment, and subject to the strictures of section 610.

■■■ The Louisiana custody judgment was entered in connection with the Herrons' legal separation. The parties and the circuit court of Cook County appear to have assumed that it was therefore only a temporary order, due to expire when someone returned to court to convert the separation into a divorce. But an order is temporary or final according to substance, not form; and a judge may not retain custody disposition, making one custody order after another, by designating them "temporary." (*Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, 382 N.E.2d 7.) The Louisiana order was not an order entered pending a complete hearing and final determination; rather, it was entered to stay in force indefinitely, with no judicial proceedings in progress. This was not a temporary order. A State's practice of allowing people to terminate their marriages in two stages, separation first and then divorce, with reconciliation aborting the final step, does not necessitate reconsidering at the second stage the custody determination made at the first. Any

temporary character the Louisiana custody judgment may have is an artifact of the law of separation and divorce, unrelated to the interest of the children or any principle of justice or policy. There is no reason to regard the Louisiana judgment as anything other than a final custody determination. Challenges to it are governed by section 610, which favors the policy of custodial stability over attempts at custodial improvement.

Neither Charlotte nor Steven filed the affidavit required by section 610(a), stating that there is reason to believe the child is endangered by his present environment. This procedural hurdle, however, is chiefly to discourage the filing of harassment suits, a danger not acute in this case. As the Louisiana judgment is by now more than 2 years old, so that the parties could file new petitions without affidavits (section 610(a)), there seems little point in penalizing both parents for their failure to comply, especially since the law was not entirely clear at the time.

We treat the parents' proceedings in the circuit court as adequately petitioning the court to modify the Louisiana custody judgment. If, upon remand, either parent can prove facts that meet the test of section 610(b), it will be proper for the court to modify custody accordingly.

## IV.

Finally, although we see no impropriety in the circuit court judge's conduct of the case, it seems best to transfer the case on remand to another judge, if only to allay Charlotte's fears that the present judge may have become too active a participant in the case.

Affirmed and remanded.

McGILLICUDDY and RIZZI, JJ., concur.