In re MARRIAGE OF JAMES PATRICK MUSSER, Petitioner and Counterrespondent-Appellee, and MARGARET MONA MUSSER, Respondent and Counterpetitioner-Appellant.

Fourth District   No. 16215

Opinion filed November 7, 1980.—Rehearing denied December 11, 1980.

TRAPP, J., dissenting.

Richard L. Heavner, of Welsh, Kehart & Shafter, P. C., of Decatur, for appellant.

Hull, Campbell, Robinson & Gibson, of Decatur (Michael I. Campbell, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Margaret Musser appeals from the trial court's order awarding her ex-husband, James Musser, the entirety of a military pension and modifying its previous order that had given her 45 percent of the net proceeds of that pension. The Mussers were divorced in 1978. In an order entered May 1, 1978, the trial court directed James to pay $30 weekly as child support and $50 monthly for one year as maintenance. The trial court also held that James' pension was nonmarital property and thus not subject to division between the spouses. This court reversed the portion of the trial court's decision concerning the pension (In re Marriage of Musser (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289); 217/240's of the pension was held to be marital property, with that fraction representing the proportionate length of time in months that the two were married while James was serving in the military. We remanded the cause for division of the marital portion of the pension. A hearing pursuant to this court's mandate was held August 28, 1979. Margaret argued that she should receive half of 217/240's of each monthly pension check; James did not present any evidence or argument. By a docket order entered August 29, 1979, and a written order filed September 7, 1979, the trial court ordered James to

pay Margaret 45 percent of the net amount of each monthly pension payment beginning in September 1979.

On the same day that the docket order was entered, James filed a section 68.3 petition (Ill. Rev. Stat. 1979, ch. 110, par. 68.3) "to modify the Judgment of Dissolution of Marriage * * *, as heretofore modified by order of the Fourth District Appellate Court," alleging a material change in circumstances since the entry of the judgment of dissolution in 1978 and seeking to retain all the monthly pension benefits; his petition referred to medical expenses from a heart attack and his sporadic employment. Margaret did not receive a payment from James in September. She sought a rule to show cause for contempt on October 9, 1979.

Both James and Margaret testified at the hearing on his petition to modify. In its memorandum opinion the trial court recited the personal and financial information given at the hearing and ruled that modification of the August 29, 1979, order was permitted under section 68.3 of the Civil Practice Act. The trial judge then found that only by awarding James all the proceeds of the pension would the two parties be on a relatively equal financial footing. In its written order the trial court found that James' physical condition justified opening the August 29 order; that the petition to modify that order had been timely filed; that the evidence justified awarding James the entire amount of the pension.

Section 510(a) of the Marriage and Dissolution of Marriage Act provides:

> "The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).)

Provisions regarding maintenance and support are more easily modifiable but still require "a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) Thus, changed circumstances alone cannot justify modifying a division of property. James' heart problems occurred after the judgment of dissolution was entered, May 1, 1978, when the pension was declared nonmarital property.

In dividing the pension, the trial court was limited to the circumstances that obtained at the time of divorce, when the rest of the property was divided, and could not consider events that occurred after that time. Thus, the trial court correctly awarded Margaret 45 percent of the net benefits of the pension—half the marital portion—corresponding to the evenly proportioned division of the couple's other property when the divorce was granted. This situation is unlike *In re Marriage of Asch-wanden* (1979), 76 Ill. App. 3d 680, 395 N.E.2d 767, *aff'd as modified* (1980), 81 Ill. 2d 31, where, in remanding for a more equitable division of property, including shares of corporate stock that had increased in value

since the initial division of property, the court instructed the trial court to take judicial notice of the value of the stock on the day of the new trial. There the court overturned the entire division of property, but the intervening event—the stock's rise in price—pertained to the value of the asset rather than to the parties' personal circumstances.

Although a trial court retains jurisdiction over a case for 30 days or until a notice of appeal is filed, whichever comes first (*Weilmuenster v. H. H. Hall Construction Co.* (1979), 72 Ill. App. 3d 101, 390 N.E.2d 579), the trial court should not have opened its judgment of August 29. The evidence presented by James pertained only to the events following the May 1, 1978, dissolution. As we have just concluded, this evidence could not have been presented at the hearing on our remand, and it fell far short of the usual justifications for opening a judgment under section 68.3. James presented no evidence of fraud, and nothing indicated that the August 29 order was invalid or technically defective. The evidence presented here did not justify the result ultimately reached. Thus the order was in error.

We reverse and remand for the court to reinstate the order of August 29, 1979, granting Margaret 45 percent of the net monthly benefits from the military pension.

Reversed and remanded with directions.

MILLS, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

This record discloses that the division of marital property provided in the decree of dissolution dated May 1, 1978, simply embraced a division agreed upon by the parties. The husband's counsel read and the wife's counsel agreed that that decree incorporated the language:

"* * * it is further ordered that the parties having chosen to divide all marital property between themselves prior to the presentation of this case, it is cause [*sic*] to the court there is no marital property to be divided."

Thus, the trial court was not called upon to hear evidence and divide the marital property within the criteria stated in section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503) and particularly subsection (c)(7), which provides for consideration of:

"(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; * * *."

The prior mandate of this court is framed as a determination that the

marital pension was marital property and the language that the wife "has an interest *to be determined by the trial court* in 217/240 percent of James' net retirement benefits as a part of the property settlement." (Emphasis added.) 70 Ill. App. 3d 706, 709, 388 N.E.2d 1289, 1291.

Such language does not mean that the trial court must mechanically make such division and award it to the wife. Properly read, the sentence means that the stated percentage is marital property and that the trial court is to determine the wife's interest in such marital property through the criteria stated in section 503 of the Act.

It appears in the record that the wife's counsel insisted that in complying with the mandate filed the trial court was limited and bound to make only the mechanical division stated in the opinion of this court. I believe that the trial court was misdirected by such argument.

Without suggesting authority, the opinion asserts that the interests of the parties must be determined in terms of the conditions on May 1, 1978. Within the boundaries of this record, the provisions of section 510(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 510(a)), which limit the revocation or modification of the terms of a decree fixing a property settlement does not properly become operative, for the decree of May 1, 1978, did not, in fact, make a judicial determination of the proper division of marital property. It simply accepted the agreement of the parties. The language of this court's opinion that the trial court determine the wife's interest in the marital property required a hearing upon appropriate evidence which the record shows have not theretofore been heard.

I suggest that the interpretation of section 510 of the Act as stated in the majority opinion is incorrect. In *In re Marriage of Herron* (1979), 74 Ill. App. 3d 748, 393 N.E.2d 1153, the court considered the operative relation between section 610 of the Act and a timely motion under section 68.3 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 68.3.) *Herron* pointed out that section 610 was directed to "final" orders of the trial court, saying:

"We read nothing in section 610 which restricts the use of Civil Practice Act provisions or Supreme Court Rules to vacate or revise a judgment on grounds not peculiar to child custody cases. Thus, for example, section 610 does not preclude a motion under sections 50(5) or 68.3 of the Civil Practice Act * · * *." (74 Ill. App. 3d 748, 753, 393 N.E.2d 1153, 1156.)

There is no contention that the husband's motion was untimely and the *Herron* rationale is equally applicable to section 510 of the Act.

A misapprehension of the law by the trial court with regard to its authority upon remand supports the use of discretion by that court in granting a motion under section 68.3 of the Civil Practice Act. *Fulwider v. Fulwider* (1972), 8 Ill. App. 3d 581, 290 N.E.2d 264.

The majority opinion does not report the "just proportions" which it purports to provide for the parties. At the time of the remand, the husband had suffered a heart attack. In August 1979, he required heart bypass surgery. In the chronology of the record, he would have been recuperating from such surgery at the time of the court's decree purporting to be pursuant to the mandate. A prognosis schedule extended rehabilitative therapy.

In 1979 his gross income from part-time employment was approximately $3900. His gross military benefit was $7450. In the first five months of 1980 the husband had had no employment. The hearing discloses that the wife was regularly employed at a bank earning $10,000 a year. She also received, at least for the time being, some $960 annually from her son. The living expenses of the parties were not remarkably different. Upon this record the trial court could reasonably conclude that the husband's possibilities of earning a living were nil or substantially limited and that his only recourse was his military retirement benefit.

I would hold that the trial court correctly set aside its decree and heard the evidence under the provisions of section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.3) and that the trial court did not abuse its discretion in entering the decree now appealed.