593 A.2d 1128

Barbara J. McCREADY a/k/a Barbara Jean O'Daniel

v.

Timothy P. McCREADY.

No. 11, Sept. Term, 1990.

Court of Appeals of Maryland.

Aug. 21, 1991.

Roger A. Perkins, Annapolis, for appellant.

William M. Ferris (Michaelson, Krause & Ferris, P.A., Annapolis), on brief, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

McAULIFFE, Judge.

This child custody case requires consideration of the interaction between concepts of "best interest of the child" and "material change of circumstances," and our determination of whether the chancellor abused his discretion by ordering a modification of an existing custody order.

## I.

Barbara J. McCready and Timothy M. McCready were married in 1983, when they were eighteen and twenty, respectively. A female child, Erin, was born on 26 February 1985. They were separated ten months later. Initially, by unwritten agreement of the parents, they continued joint legal custody, and the mother assumed primary physical custody of Erin. The father initially had Erin with him on alternate weekends, and then every weekend, subject to adjustments made from time to time to accommodate the schedules of the parties.

On 5 July 1988, the mother filed a complaint in the Circuit Court for Anne Arundel County, alleging that the father refused to return the child after a weekend visit, and requesting *pendente lite* and permanent custody. The father answered and filed a counterclaim for custody, alleging that circumstances involving the mother and a breakup with her boyfriend required him to assume temporary custody, and warranted the entry of an order granting him permanent custody.

When the parties and their attorneys appeared in court on 15 July 1988 for a hearing to determine temporary custody, they informed Judge Eugene M. Lerner that they agreed to the entry of an order providing for joint legal and physical custody with a specific schedule for shared physical custody. The agreement, approved by Judge Lerner to be effective that day, provided generally for Erin to be with her mother during the week and with her father from Friday evening each week to Monday evening of one week and Tuesday evening the next. The parties agreed to continue

the policy of alternating custody on successive designated holidays and to confer with each other concerning a daycare provider acceptable to both. They noted that the allocation of weekdays and weekends had been agreed upon in light of the mother's employment schedule, which required her to work weekends, and that if the mother were successful in finding weekday employment, "the parties would in good faith renegotiate this arrangement."

Five weeks after the order confirming the agreement was entered, the mother secured weekday employment. Over the next several months, she met with the father four times and spoke with him by telephone on two additional occasions in an effort to reach an agreement that would change the allocation of physical custody to permit Erin to be with her on some weekends. The negotiations were not successful. On 9 December 1988, the mother filed a complaint for divorce and child custody, asking for permanent custody of Erin. In addition to alleging the failure of the parties to agree to a modification of shared physical custody to accommodate her new work schedule, she averred that joint physical custody was causing the child to experience stress and confusion, and had not "proved to be good for Erin." She sought sole custody, with reasonable rights of visitation to be afforded the father.

The father filed an answer and counterclaim. He admitted that joint physical custody had not proven beneficial to Erin, but stated it would be in the best interest of the child to have primary custody granted to him.

The case was heard by Judge Robert H. Heller, Jr. for three days commencing 31 July 1989. Judge Heller decided that the best interest of the child required a change from joint physical custody to primary physical custody by the father. He granted visitation to the mother on five weekends and three weeknights every eight weeks, and for six weekends each summer. He continued the shared schedule of holidays. He also ordered the parents to "consult with each other about, and participate jointly and fully in all long range decision[s] involving Erin's education, religious train-

ing, discipline, and medical care, and other matters of major significance concerning the child's life and welfare...."

The mother appealed to the Court of Special Appeals, and we granted certiorari on our own motion before consideration of the case by that court.

The mother presents two arguments. First, she contends the chancellor improperly applied the "best interest of the child" standard. Second, she argues that even if the correct standard was applied, the chancellor abused his discretion in awarding sole legal and physical custody to the father.

## II.

As a threshold matter, we address the mother's concern that the chancellor disturbed joint legal custody. As we read the order, he did not. In *Taylor v. Taylor*, 306 Md. 290, 296, 508 A.2d 964 (1986), we defined joint legal custody as follows:

Legal custody carries with it the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare.

The chancellor tracked this language in his order and, notwithstanding earlier language in the order awarding "custody" to the father, which we believe in context referred to physical custody, and notwithstanding the absence of the label "joint legal custody," we find it clear the chancellor continued the existing joint legal custody. Neither party has voiced an objection to that status, and we turn to the questions involving physical custody.

## III.

The mother contends the "best interest of the child" standard should not have been used when the chancellor was considering a change of custody previously ordered by the court. In that instance, she argues, the proper standard

should be whether there is evidence of a material change in circumstances affecting the welfare of the child.

 The appropriate standard for determining a contested custody case is the best interest of the child. As we said in *Taylor v. Taylor, supra,* 306 Md. at 303, 508 A.2d 964:

We emphasize that in any child custody case, the paramount concern is the best interest of the child. As Judge Orth pointed out for the Court in *Ross v. Hoffman,* 280 Md. 172, 175 n. 1, 372 A.2d 582 (1977), we have variously characterized this standard as being 'of transcendent importance' and the 'sole question.' The best interest of the child is therefore not considered as one of many factors, but as the objective to which virtually all other factors speak.

The question of whether there has been a material change in circumstances which relates to the welfare of the child is, however, often of importance in a custody case. The desirability of maintaining stability in the life of a child is well recognized, and a change in custody may disturb that stability.

 Stability is not, however, the sole reason for ordinarily requiring proof of a change in circumstances to justify a modification of an existing custody order. A litigious or disappointed parent must not be permitted to relitigate questions of custody endlessly upon the same facts, hoping to find a chancellor sympathetic to his or her claim. An order determining custody must be afforded some finality, even though it may subsequently be modified when changes so warrant to protect the best interest of the child. As we said in *Hardisty v. Salerno,* 255 Md. 436, 439, 258 A.2d 209 (1969), "[w]hile custody decrees are never final in Maryland, any reconsideration of a decree should emphasize changes in circumstances which have occurred subsequent to the last court hearing." [1] Even this general state-

---

1. The salutary rule that a court does not relitigate an earlier custody order when considering a requested modification of that order does

ment may be subject to exception in the case of prior facts existing but unknown and not reasonably discoverable at the time of the entry of the original order, such as the fact that a parent to whom custody had been granted was, and continues to be, a sexual abuser of the child. *See* Sharp, *Modification of Agreement–Based Custody Decrees: Unitary or Dual Standard?*, 68 Va.L.Rev. 1263, 1266–71 (1982).

In the limited situation where it is clear that the party seeking modification of a custody order is offering nothing new, and is simply attempting to relitigate the earlier determination, the effort will fail on that ground alone. In that instance, appellant would be correct in stating that the absence of a showing of a change in circumstances ordinarily is dispositive, and that the chancellor does not weigh the various factors to determine the best interest of the child.

In the more frequent case, however, there will be some evidence of changes which have occurred since the earlier determination was made. Deciding whether those changes are sufficient to require a change in custody necessarily requires a consideration of the best interest of the child. Thus, the question of "changed circumstances" may infrequently be a threshold question, but is more often involved in the "best interest" determination, where the question of stability is but a factor, albeit an important factor, to be considered.

The father suggests that in the case before us there is no necessity to show any change in circumstances because the earlier custody order merely ratified the agreement of the parties, and did not represent the considered judgment of a

---

not mean that the court is precluded from considering evidence that was before the earlier court. *See Raible v. Raible,* 242 Md. 586, 594–95, 219 A.2d 777 (1966) (evidence of conduct occurring before earlier order is admissible, not to show whether that order was right or wrong, "but to show some of the past history of the parties insofar as that history might aid the court in appraising their present characters and fitness as custodians").

chancellor arrived at after a full adversary hearing. As noted by Professor Sharp:

> A growing minority of states have attached great significance to the distinction between litigated and agreement-based custody decrees and have refused to apply the changed circumstances standard to decrees that were not the product of an adversarial hearing.

Sharp, *supra*, 68 Va.L.Rev. at 1271.

Other courts have recognized that parental agreements concerning custody are entitled to considerable deference.

> [T]he virtues of parental agreement are strong, and the law appreciates them. The parents obviously know more about the family than a judge is likely to learn in a short, formal hearing. In a more or less amicable dissolution, the parents' natural desire to do what is best for their children gives any agreement about custody great weight as an indicator of what is in the best interest of the children. Moreover, amicable settlement of custody arrangements is a good thing in itself, for peace between the parents must benefit the children; and a court will hesitate to tamper with what may be a fragile agreement, worked out only with difficulty. (Citation omitted.)

*Herron v. Herron*, 74 Ill.App.3d 748, 30 Ill.Dec. 806, 808, 393 N.E.2d 1153, 1155 (1979).

■ We have treated as "final," subject to modification upon a sufficient showing of change, custody orders entered by the consent and upon the agreement of the parties. *Raible v. Raible*, 242 Md. 586, 594–95, 219 A.2d 777 (1966). We are not persuaded that the law of Maryland in this respect should be changed.

In the case before us, there was sufficient evidence of change to demonstrate that the parties were not simply seeking to relitigate issues previously decided, and to support the chancellor's decision to weigh all the evidence to determine whether a change in custody was required to accommodate the best interest of the child. Thus, the chancellor did not apply the wrong standard.

## IV.

We turn to the final question of whether the chancellor's decision to modify physical custody should be reversed because of error. The scope of appellate review of this question is narrow. We will not set aside factual findings made by the chancellor unless clearly erroneous, and we will not interfere with a decision regarding custody that is founded upon sound legal principles unless there is a clear showing that the chancellor abused his discretion. *Davis v. Davis*, 280 Md. 119, 124–26, 372 A.2d 231, *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).

At the trial of this case, neither party contended that the earlier agreement concerning joint physical custody represented anything other than the exercise of their best judgment at the time concerning the best interest of Erin. Neither party suggested that the order incorporating their agreement was inappropriate at the time it was entered. Rather, each party argued that changes occurring since the entry of the order required that a change in custody be made. The mother testified that joint physical custody, creating as it did two separate homes for Erin, with different rules in each home and the constant shifting between homes and parents, was causing confusion and insecurity for the child, and was otherwise adversely affecting her. The mother felt that a single home should be established with the mother, and that Erin should spend substantially less time with her father. The father, although believing that joint custody had been in Erin's best interest for a period of time, felt he should now be given primary physical custody.

The record contains a number of allegations lodged by each parent against the other, involving immaturity, selfishness, lack of sensitivity, and the like, which we need not detail. Each parent had lived with a person of the opposite sex during the period of joint custody. The father's girlfriend had left, and at the time of trial the father was living alone. The mother had initially lived with one

boyfriend, but suffered a rather violent breakup with him when he learned that she was having sexual relations with someone else. It was this episode of violence (not witnessed by the child) that caused the father to retain custody of Erin for several weeks prior to the July 1988 court hearing. At the time of trial, the mother was living with, and was engaged to and pregnant by, another man.[2]

The trial judge found the mother was less mature than the father, and was less realistic in her approach to life. He found the father to be very sincere and very credible. He found the mother to be somewhat selfish and narcissistic, and sometimes lacking in credibility. He did not find either parent unfit, and he found that each parent sincerely loved the child.

The record also supports the conclusion that the mother has become convinced that she must now create a "central nucleus family situation;" that this nuclear family should consist of her new husband, new baby, Erin, and herself; and, that in order to encourage the stability of that family, the father's contact with Erin should be reduced significantly, and he, in effect, should be reduced to the role of a visitor. The chancellor found the mother's plans in this respect arose more from selfishness and immaturity than from a proper concern for Erin's welfare. The chancellor obviously found, because it was admitted by the mother, that the mother made no attempt to discourage Erin from addressing the mother's fiance as "daddy." The chancellor said, concerning the mother, "I do not find you credible when you speak about not wanting to deny Mr. McCready access, or liberal access, or a great deal of access to your child."

The chancellor concluded that under those circumstances, continued joint physical custody was not indicated, and the best interest of the child would be served by establishing the father as principal physical caretaker, but ensuring

---

**2.** We are advised that the mother and this man have now married.

extensive continuing contact and visitation with the mother. In so concluding, we cannot say that he abused his broad discretion.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED, WITH COSTS.