*Gina Augustine v. Steven Wolf*, No. 2322, September Term 2023. Opinion by Ripken, J.

**COLLATERAL ESTOPPEL – EFFECT OF DENIAL OF FINAL PROTECTIVE ORDER ON CUSTODY PROCEEDING**

A court's denial of a final protective order does not later preclude evidence, argument, or judicial findings of abuse in subsequent custody proceedings.

**COLLATERAL ESTOPPEL – EFFECT OF DENIAL OF FINAL PROTECTIVE ORDER ON CUSTODY PROCEEDING**

Just as courts in custody modification proceedings are not precluded from considering evidence that was before a court in a previous custody hearing, and courts evaluating motions for protective orders are not precluded from evaluating evidence related to contentions first alleged in a previous protective order hearing, neither are courts collaterally estopped from considering evidence related to an allegation from a prior protective order hearing in a subsequent custody hearing.

**COLLATERAL ESTOPPEL – CHILD CUSTODY PROCEEDINGS**

To the extent estoppel by judgment applies in custody determinations, it does not preclude a court from examining the facts and circumstances previously litigated.

**COLLATERAL ESTOPPEL – CHILD CUSTODY PROCEEDINGS**

Trial court erred in precluding introduction of evidence concerning allegation of sexual abuse previously litigated at protective order hearing in subsequent custody modification hearing, as the principle of collateral estoppel was not applicable in the custody modification proceedings.

Circuit Court for Cecil County
Case No. C-07-FM-18-000027

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2322

September Term, 2023

_____

GINA AUGUSTINE

v.

STEVEN WOLF

_____

Shaw,
Ripken,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Ripken, J.

_____

Filed:  November 22, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case arises out of a custody dispute between appellant Gina Augustine ("Mother")[1] and appellee Steven Wolf ("Father"), who are the parents of "B.,"[2] a minor child born in 2017. As a result of a consent order entered in March of 2018, both parents shared joint physical and legal custody of B. In January of 2021, following an allegation that Father sexually abused B. while B. was in his care, Mother filed a petition for protection from child abuse. The Circuit Court for Cecil County initially issued a temporary protective order, and on March 9, 2021, held a final protective order hearing, in which the court declined to conclude that Father had sexually abused B., and therefore denied the petition. Subsequently, Mother sought modification of the existing custody order in the circuit court. In response, Father filed a motion *in limine* asserting that the final protective order ruling precluded the court from finding that Father had sexually abused B. at any time prior to the final protective order hearing.

Following a hearing on the motion *in limine*, the circuit court determined that the prior ruling collaterally estopped the parties from relitigating the issue of whether Father sexually abused B. prior to March 9, 2021. Mother noted a timely appeal and presents the following question for our review:[3] whether a court's denial of a petition seeking protection

---

[1] Although we are advised that the appellant's last name is now Wullschleger, we refer to her as Augustine for consistency with the proceedings below and with the briefing materials submitted to this Court.

[2] To preserve the anonymity of the minor child, we refer to the child by the randomly selected letter "B."

[3] Rephrased from: "Did the trial court err in ruling that Appellant was collaterally estopped from relying on, or introducing evidence from, the earlier protective order hearing, in the

from child abuse collaterally estops future consideration of the alleged child abuse in subsequent custody litigation.[4] For the reasons to follow, we reverse the judgment of the circuit court, vacate the circuit court's custody order, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

The issue of B.'s custody was first addressed in March of 2018, when B. was less than one year old. At that time, an initial custody order was entered by consent of the parties wherein Mother and Father were granted joint legal and physical custody of B., and vacation time and childcare costs were apportioned between the parents. Subsequent to the initial order and following allegations that B. had been sexually abused by Father, a temporary protective order was entered in January of 2021 that granted Mother temporary custody of B. and directed the Cecil County Department of Social Services ("DSS") to initiate an investigation. As part of the ensuing investigation, B. was interviewed by a Child Protective Services assessor and certified forensic interviewer, Kristen Berkowich ("Berkowich"). During the forensic interview, B. made statements about Father's conduct which DSS concluded evinced sexual abuse. B., then not yet four years old, did not provide a timeline of when the alleged abuse occurred. The DSS investigation concluded in February of 2021, and resulted in a finding of "indicated" sexual abuse.

After Mother filed the petition for protection from child abuse and the DSS

---

custody modification trial, on whether Appellee has sexually abused the parties' minor child?"

[4] Because we reverse the judgment of the circuit court based on Mother's contention that collateral estoppel is inapplicable to this case, we need not address her contention that the court abused its discretion by declining to grant her sole physical and legal custody of B.

investigation terminated, the circuit court held a final protective order hearing on March 9, 2021 ("the 2021 hearing"). The evidence adduced in the hearing was testimony from Father, Mother, and Berkowich, as well as the written DSS investigation summary and the results of a private polygraph examination taken by Father. Although DSS had a recording of Berkowich's interview with B., the court did not review the recording.[5] Nor did the court itself interview B. Following the parties' closing arguments, the court reviewed the evidence, and noted that although the DSS report indicated B. reported that Father had anally penetrated B., "I don't think that's substantiated by the medical examination that has been conducted."[6] The court denied the petition, stating: "I am unable to find that [Mother] has met the burden. I'm not able to find by a preponderance of the evidence that [Father] sexually abused the minor child." Start to finish—including preliminary motions, a 22-minute recess, and the court's oral ruling—the 2021 hearing concluded in less than two hours.

For more than a year following the court's denial of the petition for protection from child abuse, Mother continued to allege to various healthcare providers, educators, and government agencies that Father had abused B. Mother's efforts included filing a motion for a new trial, which was denied, and seeking *en banc* review in the circuit court, in which a three-judge panel affirmed the decision of the protective order court. Mother continued

---

[5] At a later hearing, Mother asserted that the video recording of the forensic interview was not made available to her until after the 2021 hearing.

[6] Although no medical record was entered into evidence, Berkowich testified that a medical examination of B. had been conducted, and although she had not personally seen the report, the examining doctor had "stated that there w[ere] no obvious signs of trauma."

to regularly file reports with DSS, as did some of B.'s teachers and healthcare providers. Eventually, between 30 to 40 reports were submitted to DSS; all but one were either ruled out or screened out. The sole exception was the initial 2021 "indicated" finding made after Berkowich's forensic interview of B., which, following the denial of Mother's petition for a protective order in the 2021 hearing, DSS amended and retroactively ruled out.[7]

Of relevance to this appeal, in 2022 Mother filed a petition to modify child custody in the circuit court, in which Mother argued that due to Father's alleged "past and ongoing sexual abuse of [B.] there has been a material change in circumstances[.]" Notably, during the pendency of the custody modification process, a Best Interest Attorney ("BIA") was appointed to represent B.[8] As part of the custody modification litigation, Father filed a motion *in limine* asserting that the court's ruling in the 2021 protective order hearing served to collaterally estop the parties from arguing, or the court from finding, that Father had abused B. prior to March 9, 2021, the date of the protective order hearing. Father's motion was opposed by both Mother and the BIA.

In January of 2023, the circuit court held a hearing to address the motion *in limine*, during which the parties presented arguments related to Father's contention that the prior

---

[7] Although documentation of DSS's decision does not appear to be in the record, the circuit court relied on the consistent representations of all parties to conclude that "following the Circuit Court's denial of the final protective order predicated on the allegations of sexual abuse, that [DSS] then took it upon itself to amend its finding to rule it out." This finding was not challenged in the circuit court, nor does Mother dispute it on appeal.

[8] A BIA is an attorney appointed by a court to represent a minor child's best interests in an action where custody, visitation rights, or the amount of a child support award is contested. *See* Md. Code, Family Law § 1-202.

denial of Mother's protective order petition served to preclude future litigation related to allegations of abuse that were made in the 2021 hearing. Following the motions hearing, the court issued a written memorandum opinion on the matter. In the opinion, the court rejected the argument that res judicata applied to the case, as the custody modification litigation was a distinct cause of action from the petition for a protective order.

The court, however, accepted Father's argument that the doctrine of collateral estoppel served to limit arguments, evidence, and findings in the ongoing custody modification proceedings. The court determined that Mother "was afforded the opportunity to call whatever witnesses she deemed appropriate, produce and provide to [the previous] court whatever evidence she deemed necessary, and to cross examine any witnesses and attack any evidence produced by Father[,]" and thus, "[s]he was, in every sense, given a fair opportunity to be heard on the issue." In conclusion, the court determined that:

> Mother is collaterally estopped from relitigating the issue of whether Father sexually abused [B.] prior to March 9, 2021. Inasmuch as Father seeks the suppression, or declaration of inadmissibility, of evidence related to allegations of sexual abuse of [B.] by Father prior to March 9, 2021, the court offers the following guidance: the court will not admit such evidence for the purpose of determining whether Father sexually abused [B.] prior to March 9, 2021. The determination of whether any such evidence is relevant for some other purpose will have to be made at trial as that item or testimony is sought to be introduced.

Subsequently, the court held a four-day merits hearing on the motion to modify custody. During that trial, the court maintained its ruling, and the parties were precluded from submitting evidence for the purpose of demonstrating that Father had abused B. prior to the date of the 2021 hearing. The court also noted that the protective order court's declination to enter a protective order operated as "a stop upon the [c]ourt [from] making

5

the contrary finding." Accordingly, the parties were prevented from moving to admit certain evidence in the trial, including the video of the forensic interview and the testimony of an expert—Dr. Champion—which concerned the validity and meaning of the forensic interview. The court did consider evidence from prior to the 2021 hearing for purposes other than to support the contention that Father had abused B. prior to March 9, 2021.

After the parties presented arguments and testimony, the court determined that it was unable to find by a preponderance of the evidence that B. had been sexually abused in the time frame following the 2021 hearing and stated that "the real issue here is . . . the persistent involvement of the Department of Social Services." The court, while noting that both Mother and Father were sincere in their desire to advance B.'s best interests, also articulated its concern regarding the impact Mother's "mental health" and "certainty that [B.] has been abused" could have on B.'s development and wellbeing. After conducting an analysis of the case and relevant custody factors, the court modified custody, granting the parties shared physical custody and joint legal custody, but vesting tiebreaking authority with Father. This appeal followed.

## DISCUSSION

**I.** **THE CIRCUIT COURT ERRED IN CONCLUDING THAT THE PRIOR DENIAL OF A FINAL PROTECTIVE ORDER PRECLUDED THE ADMISSION OF EVIDENCE RELATED TO CLAIMS OF CHILD SEXUAL ABUSE IN SUBSEQUENT CUSTODY LITIGATION.**

### A. Standard of Review

The question of whether the doctrines of res judicata or collateral estoppel apply to preclude relitigation of a fact or issue is a question of law which we review de novo. *Garrity*

6

*v. Md. State Bd. of Plumbing*, 447 Md. 359, 368 (2016) ("Whether it was appropriate to grant preclusive effect . . . is a legal conclusion that this Court reviews de novo.") (italics omitted); *see also Bank of New York Mellon v. Georg*, 456 Md. 616, 666 (2017) ("We review without deference, however, questions of law, such as a determination as to the applicability of the doctrines of res judicata and collateral estoppel.").

### B.    Collateral Estoppel

The doctrine of collateral estoppel, alongside the related concept of res judicata, is a form of the broader doctrine of estoppel by judgment. *Scott v. Prince George's Cnty. Dept. of Soc. Servs.*, 76 Md. App. 357, 374 (1988). After an issue has been conclusively decided in a judicial proceeding, collateral estoppel prevents the relitigation of that issue when the following four-part test is satisfied: (1) the issue decided in the prior adjudication is identical to the one presented in the subsequent litigation; (2) there was a final judgment on the merits in the prior adjudication; (3) the party against whom the claim is asserted is either the same party as in the prior adjudication, or is in privity with a party to the prior adjudication; (4) the party against whom the claim is asserted received a fair opportunity to be heard on the issue. *See Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 391 (2000) (citing *Washington Suburban Sanitation Comm'n v. TKU Assocs.*, 281 Md. 1, 18–19 (1977)). This doctrine, by which a fact previously adjudicated in litigation between the same parties is treated as conclusive in a subsequent action between the same parties, is "based on two principles: judicial economy and fairness." *Garrity*, 447 Md. at 368.[9]

---

[9] Collateral estoppel is distinct from, but closely related to, the doctrine of res judicata. *Colandrea*, 361 Md. at 387–88. While collateral estoppel applies to facts or issues

## C. Parties' Contentions

Mother argues that the circuit court erroneously concluded that the doctrine of collateral estoppel precluded the introduction of evidence and argument related to concerns of sexual abuse occurring prior to March 9, 2021. Although acknowledging that no Maryland appellate court has directly addressed the preclusive effect of a prior protective order hearing on subsequent custody litigation, Mother asserts that related Maryland caselaw intimates that collateral estoppel does not apply to a custody modification proceeding where a changed circumstance is asserted.

Father contends that the circuit court correctly applied the doctrine of collateral estoppel when it precluded the introduction of evidence and argument related to concerns of sexual abuse occurring prior to March 9, 2021. Father acknowledges the lack of appellate precedent addressing the preclusive effect of a prior protective order hearing on subsequent custody litigation, but nonetheless argues that because the elements of collateral estoppel were met, the doctrine should apply in this case.

---

conclusively decided in prior litigation between the parties, res judicata applies when the second proceeding between the parties is based on the same cause of action as the first. *See Powell v. Breslin*, 430 Md. 52, 63–64 (2013). In such a situation, res judicata operates to preclude all matters which could have been litigated in the prior proceeding, thereby completely obviating any subsequent claim on the same cause of action. *See Colandrea*, 361 Md. at 387–88. Because we agree with the circuit court that Mother was unable to litigate the modification of custody in the protective order action, the court did not err in declining to apply res judicata in the instant case, and we shall not examine the doctrine in detail.

8

### D. Legal Framework

#### i. *Protective order hearings*

We begin by examining the distinctions between a protective order hearing and a custody modification hearing. Pursuant to the Family Law Article ("FL") of the Maryland Code, a protective order can be entered when a court finds by a preponderance of the evidence that a person committed domestic violence, which includes abuse of their child. *See C.M. v. J.M.*, 258 Md. App. 40, 56–57 (2023). "A petitioner may seek relief from abuse by filing with a court . . . a petition that alleges abuse of any person eligible for relief by the respondent." FL § 4-504(a)(1). A person eligible for relief includes the natural or adopted child of the respondent. FL § 4-501(m)(3). The purpose of the statute is "to protect and aid victims of domestic abuse by providing an immediate and effective remedy." *Coburn v. Coburn*, 342 Md. 244, 252 (1996) (internal quotation marks and citation omitted). A protective order under the domestic abuse statute is not intended to "punish[]. . . past conduct" but rather to "prevent further harm to the victim." *Id.* To this end, the barriers to seeking a protective order are relatively minimal, and "designed to be available for *pro se* applicants," with pre-printed forms accessible in Maryland courthouses, filing fees waivable, and preliminary *ex parte* hearings available. *Id.* at 253–54.

In cases of domestic violence, the Supreme Court of Maryland has emphasized the importance of evidence of past abuse as potentially predictive of future abusive behavior. *Id.* at 257–58 (noting that "[d]ue to the cyclical nature of domestic violence, introduction of evidence of the relationship's history of abuse . . . is vital in allowing a court to fully

9

comprehend the risk posed to a particular petitioner" (internal quotation marks and citation omitted)). Thus, "excluding evidence of past abuse would violate the fundamental purpose of the statute, which is to prevent future abuse." *Id.* at 258. Applying these principles, this Court recently decided that when a petition for a protective order has been litigated, that denial does not collaterally estop courts in future protective order hearings from examining evidence of abuse alleged in previous hearings, irrespective of whether the previous protective order petition was denied. *See Hripunovs v. Maximova*, 263 Md. App. 244, 268 (2024).

*Hripunovs* involved a case where a petitioner, Maximova, alleged abuse, but was unable to demonstrate sufficient evidence for a court to grant her a final protective order. *Id.* at 250. Subsequently, Maximova filed a second petition seeking a protective order, in which she repeated many claims litigated in the initial proceeding, but also alleged new instances of abuse occurring after the denial of her first protective order petition. *Id.* at 250–53. During the second protective order hearing, Maximova presented a report from a forensic nurse examiner and photographs which allegedly depicted bruises she sustained due to the defendant's physical abuse. *Id.* at 254. Maximova asserted that the photographs and report pertained to abuse she suffered prior to the first protective order hearing, but the hospital had not provided her with the report and photographs in time for the first hearing. *Id.* The circuit court accepted the evidence, reasoning that "[a]lleged prior abuse is admissible and relevant because it predicts future abuse." *Id.* at 259 (emphasis omitted). This Court affirmed, reasoning that as Maximova alleged new abuse following the denial of the first protective order, res judicata did not preclude her second petition; nor did the

10

doctrine of collateral estoppel prevent her from litigating the new allegations of abuse. *Id.* at 268. Thus, we determined that with new instances of abuse alleged, it was not erroneous for the trial court to examine Maximova's past allegations and evidence of abuse, notwithstanding that her previous petition had been denied. *Id.* This is because "'excluding evidence of past abuse would violate the fundamental purpose' of the domestic violence statute, 'which is to prevent future abuse.'" *Id.* (quoting *Coburn*, 342 Md. at 258).

### ii.     Custody modification hearings

In contrast to a protective order hearing, a custody proceeding is focused on weighing the "child's life chances in each of the homes competing for custody and then [] predict[ing] with whom the child will be better off in the future." *Montgomery Cnty. Dep't of Soc. Servs. v. Sanders*, 38 Md. App. 406, 419 (1977). "Unequivocally, the test with respect to custody determinations begins and ends with what is in the best interest of the child." *Azizova v. Suleymanov*, 243 Md. App. 340, 347 (2019). In crafting a custody arrangement that will advance the best interest of a child, courts are instructed to determine "what appears to be in the welfare of the child[] at the time of the [custody] hearing." *Raible v. Raible*, 242 Md. 586, 594 (1966). However, evaluation of a parent's past conduct is still relevant to the extent it "is predictive of future [parental] behavior and its effect on the child." *Azizova*, 243 Md. App. at 357. "Generally, past conduct is raised in custody or termination of parental rights cases where neglect or abuse has been alleged[.]" *Id.*

Although a custody proceeding is typically titled as litigation between the parents of a minor child, "children have a substantial interest in the outcome of their parents' custody dispute and are individuals with rights recognized by the courts[.]" *Auclair v.*

11

*Auclair*, 127 Md. App. 1, 13 (1999), *abrogated on other grounds by Fox v. Wills*, 390 Md. 620 (2006). As this Court has previously indicated, a child has "an indefeasible right to have any custody determination concerning [the child] made, after a full evidentiary hearing, in [the child's] best interest." *Flynn v. May*, 157 Md. App. 389, 410 (2004). Similarly, we have "long recognized that a court commits legal error when it makes a decision that impacts a custody determination without first considering how that decision will affect the child's 'indefeasible right' to have his or her best interests considered." *A.A. v. Ab.D.*, 246 Md. App. 418, 448 (2020) (quoting *Flynn*, 157 Md. App. at 410) (holding that it was erroneous for a court conducting a custody hearing to preclude evidence as a discovery sanction upon a parent without first determining if the evidence was relevant to the child's best interest).

To effectuate a child's unique interest in the outcome of a custody dispute, a BIA is frequently appointed to represent a child in contested custody proceedings, and in certain contexts, the failure to provide independent representation to a child in such proceedings can be reversible error. *See Levitt v. Levitt*, 79 Md. App. 394, 404–05 (1989) (holding that appointment of separate counsel for a minor child was required to remedy the "deficiency" arising from the fact that a court "never heard from a truly objective witness and did not have the input of someone who would speak on behalf of the child"); *see also Auclair*, 127 Md. App. at 14 (noting that parents involved in a custody dispute are frequently unable to make "legal decisions that relate to the underlying lawsuit on the child's behalf[,]" as the dispute may "becloud[] parental judgment with emotion and prejudice." (internal quotation marks and citations omitted)). Similarly, certain legal privileges are held by the child, and

12

are unable to be unilaterally waived by the parties during a contested proceeding; rather, waiver may require the consent of the child or their independent counsel. *See Nagle v. Hooks*, 296 Md. 123, 127–28 (1983) ("We believe that it is inappropriate in a continuing custody 'battle' for the custodial parent to control the assertion or waiver of the privilege of nondisclosure.").

The unique character of the finality of child custody orders also merits discussion. Although custody orders are intended to be a durable dispensation effectuating "the long-term . . . best interest of the child[,]" entered after a court is able to evaluate "the full record of evidence," a custody order "never achieves quite the degree of finality that accompanies other kinds of judgments." *Frase v. Barnhart*, 379 Md. 100, 111–12 (2003). Thus, to modify a custody order, a movant is required to show that a change in circumstances has occurred which affects the best interest of the child. *See McCready v. McCready*, 323 Md. 476, 481–82 (1991). The quasi-final nature of a custody order strikes a balance between allowing future modification of a custody determination as circumstances warrant and affording stability to the child, as well as preventing a "litigious or disappointed parent" from "relitigat[ing] questions of custody endlessly upon the same facts, hoping to find a chancellor sympathetic to his or her claim." *Id.* at 481. This principle, by which a material change in circumstances is required in order to modify a custody order, doubtless "has its roots in principles of claim and issue preclusion." *McMahon v. Piazze*, 162 Md. App. 588, 594 (2005). Nevertheless, our decisional law has stopped short of applying res judicata to bar successive motions to modify custody or terminate parental rights where changed circumstances are alleged. *Id.* at 595–96. Likewise, the Supreme Court of Maryland has

13

advised that:

> The salutary rule that a court does not relitigate an earlier custody order when considering a requested modification of that order does not mean that the court is precluded from considering evidence that was before the earlier court. *See Raible v. Raible*, 242 Md. 586, 594–95 (1966) (evidence of conduct occurring before earlier order is admissible, not to show whether that order was right or wrong, "but to show some of the past history of the parties insofar as that history might aid the court in appraising their present characters and fitness as custodians").

*McCready*, 323 Md. at 481 n.1. Thus, to the extent estoppel by judgment applies in custody determinations, it does not preclude a court from examining the facts and circumstances previously litigated. *Id.*

### E.  Analysis

This case bears substantial resemblance to *Hripunovs v. Maximova*, in which this Court determined that following the denial of a protective order, collateral estoppel did not operate to bar evidence related to previously adjudicated allegations of abuse in a subsequent final protective order hearing. *See Hripunovs*, 263 Md. App. at 268. As in *Hripunovs*, here Mother previously filed a request for a protective order, which was denied by the court. *Id.* at 250. As in *Hripunovs*, Mother brought subsequent litigation which both asserted the same claims alleged in the previous hearing, but critically also alleged abuse which continued after the initial protective order hearing. *Id.* at 268. Again, as in *Hripunovs*, Mother attempted to supply evidence to the court that was probative of the previously litigated abuse but had been unavailable to her at the earlier hearing— specifically, the video of Berkowich's forensic interview of B. *Id.* at 254, 268. However, unlike in *Hripunovs*, in the instant case, the court precluded the introduction of evidence

14

of the alleged abuse based on the doctrine of collateral estoppel. In our view, this was erroneous.

The overriding function of a protective order hearing is to prevent future abuse. *Coburn*, 342 Md. at 258. To that end, "excluding evidence of past abuse would violate the fundamental purpose" of such a hearing. *Id.* In our view, the same principle applies to a child custody hearing, as exposing a child to the risk of sexual abuse is unquestionably incompatible with the "paramount purpose" of a custody order, which is "securing the welfare and promoting the best interest of the child." *Santo v. Santo*, 448 Md. 620, 627 (2016) (internal quotation marks and citation omitted). Thus, we determine that a court's denial of a final protective order does not later preclude evidence, argument, or judicial findings of abuse in subsequent custody proceedings.

While we recognize the importance of the principles which underpin the doctrine of collateral estoppel, *see Garrity*, 447 Md. at 368, we conclude that concerns related to these principles must give way to a child's "indefeasible right" to have their best interests fully considered in a custody proceeding. *See A.A.*, 246 Md. App. at 422; *see also In re Adoption/Guardianship No. 87A262*, 323 Md. 12, 22 (1991) (determining that "a juvenile court finding by a preponderance of the evidence" should not preclude a circuit court from later "scrutinizing that decision" in a subsequent case requiring a different standard of proof). To hold otherwise would be to condemn courts to potentially fashion custody orders without the benefit of important evidence, including evidence which is "predictive of future [parental] behavior and its effect on the child." *Azizova*, 243 Md. App. at 357. Just as courts in custody modification proceedings are not precluded from considering evidence that was

15

before a court in a previous custody hearing, *McCready*, 323 Md. at 481 n.1., and courts evaluating motions for protective orders are not precluded from evaluating evidence related to contentions first alleged in a previous protective order hearing, *Hripunovs*, 263 Md. App. at 268, neither should courts be collaterally estopped from considering evidence related to an allegation in a prior *protective order* hearing in a subsequent *custody* hearing.[10]

In so holding, we are also cognizant of another vital difference between the custody modification and protective order hearings—namely, B.'s ability to have independent counsel participate in the proceedings.[11] Here, Mother filed the motion for protective order, which was ultimately denied, on B.'s behalf, but B. as an individual was unrepresented by counsel during the protective order proceedings. By contrast, at the subsequent custody hearing, B. was independently represented by counsel, which as our caselaw notes, may be required in contested hearings to allow a child's best interests to be fully effectuated. *See Auclair*, 127 Md. App. at 14.

Of importance here, we recognize that the nature of a contested proceeding between

---

[10] In so deciding, we do not obviate the well-established principle that "an existing custody order ordinarily should not be modified in the absence of a showing of changes affecting the welfare of the child[.]" *Domingues v. Johnson*, 323 Md. 486, 498 (1991).

[11] Although nothing in the text of FL § 1-202—or in the protective order statutes (FL §§ 4-504.1(c), 4-505(a), and 4-506(d))—prohibits the appointment of a BIA in a protective order hearing, we are unaware of any Maryland cases where this occurred. In addition, the protective order statutes do not expressly authorize appointment of a BIA in a protective order hearing. While a BIA's appointment and representation of a child at a protective order hearing does not appear to be impermissible, it would seem unlikely and impractical due to the fast-paced nature of protective order proceedings and the statute's purpose of "providing an immediate and effective remedy" to victims of domestic abuse. *Coburn*, 342 Md. at 252 (internal quotation marks and citation omitted).

parents, and particularly one where allegations of child sexual abuse are involved, may "becloud[] parental judgment with emotion and prejudice." *Id.* For this reason, it was vital that B. be appointed independent representation so that the court had the ability to arrive at a conclusion with the "input of someone who would speak on behalf of the child." *Levitt*, 79 Md. App. at 404. Additionally, the existence of independent representation had a substantive effect on the evidence available in the custody proceeding. B.'s representation allowed the waiver of B.'s therapist-client privilege, thereby allowing testimony that would not have been available in the earlier protective order proceeding when B. was unrepresented. *See Nagle*, 296 Md. at 127–28.

Due to B. being independently represented at the custody hearing, but not at the prior protective order hearing, we additionally note that here B. was not "fully represented, with the same incentives, by another party in the prior matter[,]" as is required to apply the doctrine of collateral estoppel. *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 628 (2013). As our caselaw demonstrates, children are not inherently in privity with their parents. *See Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 146 (2012) (holding that "context is key" in such a determination). B.'s counsel in the custody proceeding held the power to waive B.'s privilege, while Mother lacked that same ability in the first proceeding. Even assuming identical motivations, this would appear to preclude Mother's ability to "fully represent[]" B.'s position in the protective order hearing. *Mathews*, 435 Md. at 628.

For the reasons articulated herein, we conclude that the granting of Father's motion *in limine* was error as the principle of collateral estoppel was not applicable in the custody modification proceedings. Accordingly, we reverse the judgment of the circuit court as to

17

the collateral estoppel decision and vacate the circuit court's custody order.[12] On remand, the court will have the opportunity to conduct a new custody modification proceeding and make determinations with the benefit of a more fulsome record.

**JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY REVERSED AS TO THE COLLATERAL ESTOPPEL DECISION. CUSTODY ORDER IS VACATED AND CASE REMANDED TO THAT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

[12] To be sure, our decision today does not endorse a position on the veracity of Mother's allegations against Father, nor do we seek to intrude on the circuit court's proper exercise of its discretion in finding facts, weighing evidence, and reaching a custody determination in B.'s best interest.